## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| ABDULRAHMAN JAMEA, | : | Case No. 2:23-cv-1699 |
| | : | |
| Petitioner, | : | |
| | : | District Judge Michael H. Watson |
| vs. | : | Magistrate Judge Chelsey M. Vascura |
| | : | |
| WARDEN, SOUTHERN OHIO | : | |
| CORRECTIONAL FACILITY,[1] | : | |
| | : | |
| Respondent. | : | |

---

## REPORT AND RECOMMENDATION

---

Petitioner, a state prisoner proceeding without the assistance of counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1).  This matter is before the Court on the petition and the return of writ, to which Petitioner has not replied. (Doc. 1, 6).

For the reasons provided below, it is recommended that he petition be denied.

## I.  FACTUAL BACKGROUND

The Ohio Court of Appeals set forth the following set of facts leading to Petitioner's convictions and sentence:[2]

{¶ 1} . . . Jamea was charged in 2 separate indictments of 4 counts each, which

---

[1] When Petitioner initially filed this action he was located at the Butler County Prison in Butler, Pennsylvania.  (*See* Doc. 1).  The Ohio Department of Rehabilitation and Correction, Offender Details webpage indicates that Petitioner is now located at the Southern Ohio Correctional Facility.  Therefore, the SOCF Warden is the proper respondent to this action.  *See* Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

[2] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence."  Because Petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct.  *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

reflected 2 separate sets of events that occurred 15 days apart. In Franklin C.P. No. 19-CR-2860, he was charged and convicted for shooting at 4 women in the parking lot of his Shanley Drive apartment complex on April 30, 2019, and in Franklin C.P. No. 19-CR-2597, he was charged and convicted for shooting at 4 men at a Stonehenge Drive apartment complex on May 15, 2019.

{¶ 2} The events of April 30, 2019 were observed by Andrea Curtiss, who lived in the Shanley Drive apartment complex and worked remotely for the state of Connecticut. Ms. Curtiss had seen Jamea on at least two prior occasions, had at least one conversation with him, knew which apartment in the complex Jamea lived in, identified him as the shooter in a photo array six months after the shooting, and identified him again at trial. Ms. Curtiss worked from home and had a view of the parking lot where the shooting occurred from her desk. When she looked out the window that morning at around 9:30 a.m., she saw four women climbing in and out of one of the complex trash dumpsters, yelling at each other, picking out items of clothing, placing them into trash bags, and putting the bags into a car. She found this situation strange and became nervous, so she called 911 and reported the incident. But within a few moments after she hung up with emergency services for the first time, she witnessed Jamea approach the women and begin shooting at them

. . .

{¶ 3} Luckily, none of the women were hit, although one suffered minor injuries from broken glass. Three of the women testified at Jamea's trial and clarified the events leading up to the incident. Apparently, the women had packed luggage for an upcoming trip, and had left the luggage in their car. But the prior evening, they discovered that the luggage was missing. Two of the women were friendly with Jamea's girlfriend Saham Khalif and were familiar with Jamea. They suspected that Jamea or someone connected to him was responsible for the theft, and the four women went to the Shanley Drive complex to look for their luggage and clothing. When they discovered their clothing was in the dumpster, one of the women angrily phoned Khalif to complain about the situation. At around the same time, they saw Jamea approaching them, so they ran and got in their car just as Jamea began shooting at them. A police officer arrived on the scene shortly thereafter, presumably responding to Ms. Curtiss' 911 call. The victims were still on the scene and spoke to the officer, who testified that at least one of them identified the shooter as "Abdulrahman" but was unable to provide a last name. The victims also provided the officer a general description of the shooter that closely matched Jamea; one of them subsequently identified Jamea as the shooter from a photo lineup, and two of them identified him at trial.

{¶ 4} Fifteen days later, on May 15, 2019, there was a shootout at an apartment complex on Stonehenge Drive between Jamea and four other men. Three of the

men involved in the shooting—Abdikhadir Abdi, Abdurahman Adan a/k/a "Top Mali," and Abdulbasid Maxanad—testified at Jamea's trial.  Mr. Adan was seriously injured in the incident, having been shot on the left side of his head.

{¶ 5} Mr. Abdi testified that a car suddenly pulled up and at least one of the occupants began shooting at the four men, who were in and around Mr. Abdi's car. He testified that when the shooting started, he retrieved a gun from his glove compartment and returned fire, shooting the gun four times.  The other men testified that they were both in the backseat of Mr. Abdi's car and did not see who was shooting or at what.

{¶ 6} None of the men were able to identify Jamea as being involved in the affray, but parts of the shootout were seen by witnesses, who also testified [including] N.K., a twelve-year-old boy playing with friends at the Stonehenge Drive complex. He testified that he saw a red Hyundai drive fast into the complex, driven by a woman with a male passenger.  When the car stopped, the passenger got out, and there was shooting.  N.K. fled and hid behind a building.  He did not see who was doing the shooting, had never before seen the car, and had never before seen the male passenger.  And Dacey Lamb, a resident of the complex, testified for Jamea. Ms. Lamb stated that she was inside her apartment watching television when she heard shots fired, and got to the window in time to see Mr. Abdi fire the last shot in the exchange from the parking lot area of the complex.  She testified she recognized both Mr. Abdi and his car, because Mr. Abdi's car "was always there. They were the ones that would come into my building and smoke marijuana * * *. And I would ask them to leave." (Mar. 21, 2020 Tr. Vol. 4 at 802.)

{¶ 7} Jamea was apprehended shortly after the shootout at a nearby Circle K gas station, along with his girlfriend.  He had been shot in the back of his leg. Surveillance video from the Circle K shows a red Hyundai parking at one of the gas pumps, and Saham Khalif exiting the driver's side of the vehicle.  She opens the trunk and walks behind the car, closes the trunk, walks and then runs towards the side of the building out of frame, all the while holding something in her hands that is covered by some piece of cloth.  After several seconds she returns to frame, empty-handed, and runs back to the passenger side of the car.  She returns to the driver's side, then again opens the trunk, and then walks towards the entrance to the main building and out of the camera frame.  At the same time, the first police cruisers arrive on the scene, officers get out and approach the car, open the passenger door, and appear to begin a conversation with the passenger.  Khalif returns to the frame, apparently from inside of the building just after the fourth squad car arrives, carrying what appear to be paper towels.  She returns towards the car, and the video ends.  A Columbus Police Detective subsequently found a handgun under a milk crate on the side of the building where Khalif headed the first time she left the car.

{¶ 8} Jamea was interrogated by the police six days later, and the video was shown to the jury.  During questioning, Jamea admitted that he was involved in the Stonehenge Drive shootout but maintained that he acted in self-defense.  He forcefully encouraged investigators to review the apartment complex's security footage of the incident, which he argued would corroborate his story, but no such footage exists.

(Doc. 5, Ex. 20 at PageID 219-23).

## II.  PROCEDURAL HISTORY

### State Trial Proceedings

On May 28, 2019, the Franklin County, Ohio, grand jury returned an indictment charging Petitioner with four counts of felonious assault in connection with the May 15, 2019 incident. (Doc. 5, Ex. 1).  On June 12, 2019, the Franklin County grand jury returned a second, four-count indictment charging Petitioner with four counts of felonious assault in connection with the April 30, 2019 incident.  (Doc. 5, Ex. 3).  Petitioner, through counsel, entered a plea of not guilty to the charges in both indictments.  (*See* Doc. 5, Ex. 2, 4).  The cases were consolidated for trial.  (Doc. 5, Ex. 8).

On March 17, 2020, following a jury trial, Petitioner was found guilty of all charges. (Doc. 5, Ex. 9).  Petitioner was sentenced to serve "a total aggregate term of a definite and mandatory term of 12 years followed by an additional and indefinite sentence consisting of a minimum of 35 years and a maximum of 38.5 years at the Ohio Department of Rehabilitation and Corrections."  (Doc. 5, Ex. 10 at PageID 76).

### Direct Appeal

Petitioner, through new counsel, filed a notice of appeal to the Ohio Court of Appeals. (Doc. 5, Ex. 13).  In his appellate brief, Petitioner raised the following three assignments of

error:

    I.   The verdicts regarding the May 15th shooting (Counts 5, 6, 7 and 8) are contrary to the manifest weight of the evidence.

    II.   The trial court erred by trying the two indictments in a consolidated trial, over Mr. Jamea's objection.

    III.  Mr. Jamea was deprived of effective assistance of counsel.
        A.  Failure during the trial to renew opposition to consolidated trial of the two indictments
        B.  Failure to request an instruction forbidding use of "other acts" evidence.
        C.  Failure to object to hearsay statements of Saham Khalif in Trial Exhibit N.
        D.  The totality of trial counsel's performance.

(Doc. 5, Ex. 15 at PageID 94-95).  On May 17, 2022, the Ohio Court of Appeals overruled

Petitioner's assignments of error and affirmed the judgment of the trial court.  (Doc. 5, Ex. 20).

      Petitioner did not appeal the decision to the Ohio Supreme Court.

**Federal Habeas Corpus**

      On May 17, 2023,[3] Petitioner filed a federal habeas corpus petition in this Court.  (Doc.

1).  Petitioner raises the following seven grounds for relief, verbatim, in the petition:

      **GROUND ONE**: 19CR-2860 prosecutor lies during trial and said I had 3 spare bullets and reloaded, the crime scene investigator also says gun held 14 bullets.

      <u>Supporting Facts</u>: This case is a self defense case the gun that was recovered from the gas station is the gun I took from the "victim" the prosecutor said that was a lie because the gun only held 14 bullets and 17 shell casings were recovered I never reloaded anything that day and if you look at the picture of the gun when it was recovered it clearly shows the clip held 17 bullets so the prosecutor flat out lied and the crime scene investigator too.

---

[3] The petition was received by the Court on May 22, 2023.  (*See* Doc. 1).  Petitioner avers, however, that he placed the petition in the prison mailing system for delivery to the Court on May 17, 2023.  (*See* Doc. 1 at PageID 17). Because under *Houston v. Lack,* 487 U.S. 266 (1988), the filing date of a federal habeas corpus petition submitted by a pro se prisoner is the date on which the prisoner provides his papers to prison authorities for mailing, *see In re Sims,* 111 F.3d 45, 47 (6th Cir. 1997), it is presumed that the petition was "filed" on May 17, 2023.

**GROUND TWO**: 19CR-2860 "victims" never pointed me out on the stand. Interview video used to place me at scene not permissible.

Supporting Facts: Since the "victims" never pointed me out on the stand the case was suppose to be dismissed but the prosecutor decided to use my interview video since I place myself on the scene I was heavily medicated and in a lot of pain I got shot in the back of the leg in this case so I had surgery and I had 2 wide open wounds on my leg very serious wounds I was on morphine and countless other pain medication if you watch the interview video from when they roll me in the room straight from the hospital before they question me even the detective asks if I'm okay because I was so out of it.

**GROUND THREE**: 19CR-2597 the photo lineup used to have the independent witness point me out was illegal I was the only person who matched the description.

Supporting Facts: Andrea Curtiss described the shooter as having tall curly hair I was the only person on there with tall curly hair I was also the only Somalian everybody else was African American that looked nothing like the description she made so obviously she had no choice but to point me out.

**GROUND FOUR**: Judge doesn't allow the video of the victims inside the pattywagon after shooting to get translated by the translator my lawyer had during trial

Supporting Facts: This case is based off of the credibility of the victims and witness that video would've challenged the "innocent school girls" the victims were portraying to be because in the video they talk about getting someone killed and also place me out "east" and the incident occurred up "north" basically this video would've enough to put more than a doubt in the jurors minds about their credibility.

**GROUND FIVE**: 19CR-2597 Andrea Curtiss the "independent witness" says on the stand during trial that I broke into the apartment I was staying in.

Supporting Facts: About 2 weeks prior to the shooting incident someone did in fact break into the apartment I was staying at and 1 was on the police report because a couple of my things were stolen first off I'm not the person that broke into my apartment that's obvious on the stand Andrea claims the same person that broke into the apartment was the same person that shot at the females this woman should've never been allowed to point me out on the stand because she obviously doesn't know who committed the shooting and the illegal photo lineup she pointed me out of furthermore proves that fact also you're not allowed to bring up unrelated criminal accusations during a trial.

6

**GROUND SIX**: Lawyers poor defense during cross examination.

Supporting Facts: These cases didn't have a video of the actual incident in the 19CR-2597 case there was no gun recovered nothing to place me at the scene but the words of the victims and independent witness Andrea Curtiss, they all changed their statements during the investigation and on the stand so the cross examination of my lawyer really matters sand she did a poor job never really bringing that up or attacking it she basically got up confirmed what they said and sat down. In the 19CR-2860 case when the prosecutor makes it seem impossible that I took the gun from robber she never let me tell my side on the stand or at least let me demonstrate it because I was taught to disarm someone with that type of weapon back in high school.

**GROUND SEVEN**: I have the same exact charges felonious assaults and got consecutive sentences even though they stem from one incident (allied offenses).

Supporting Facts: In the 19CR-3597 case I got a consecutive sentence for every charge and they are all the same charges felonious assault since it is allied offenses they should be ran concurrent same with the 19CR-2860 case.

(Doc. 1 at PageID 5-13).

Respondent has filed a return of writ in opposition to the petition (Doc. 6), to which petitioner has not responded. According to Respondent, Petitioner's grounds for relief are non-cognizable, and/or procedurally defaulted.

## III. THE PETITION SHOULD BE DENIED.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275–76 (1971). In order to satisfy the fair presentation requirement,

7

the claims asserted in the federal habeas petition must be based on the same facts and same legal theories that were presented to the state courts. *Carter v. Mitchell*, 693 F.3d 555, 568 (6th Cir. 2012) (citing *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998)). Moreover, a claim is deemed fairly presented only if the petitioner presented his constitutional claims for relief to the state's highest court for consideration. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985). If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the federal habeas court may be barred from considering an issue of federal law from a judgment of a state court if the judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *See Harris,* 489 U.S. at 260-62. The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something to preserve the issue for appellate review. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

The Sixth Circuit employs a three-prong test, which was initially established in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), to determine if a claim is procedurally defaulted under the adequate and independent state ground doctrine:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Hoffner v. Bradshaw*, 622 F.3d 487, 495 (6th Cir. 2010) (quoting *Jacobs v. Mohr,* 265 F.3d 407, 417 (6th Cir. 2001) (in turn quoting *Maupin*)); *see also Johnson v. Bradshaw*, 493 F. App'x 666, 669 (6th Cir. 2012). Under *Maupin* and as discussed above, if the three prerequisites are met for finding a claim is procedurally defaulted under the adequate and independent state ground doctrine, federal habeas corpus review of the defaulted claim is precluded unless the petitioner can demonstrate cause for and prejudice from the procedural default or that failure to consider the defaulted claim will result in a "fundamental miscarriage of justice." *Hoffner*, 622 F.3d at 495 (citing *Maupin*, 785 F.2d at 138); *Johnson,* 493 F. App'x at 669. *See also Coleman*, 501 U.S. at 750; *Harris,* 489 U.S. at 262; *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v.*

*Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, Petitioner failed to raise any of his claims on direct appeal or at any other point during the state-court proceedings. The Sixth Circuit Court of Appeals has consistently recognized that under Ohio law an issue that is not raised by a petitioner on direct appeal is subsequently barred from review based on the doctrine of *res judicata. See, e.g., Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir. 1998) (recognizing the procedural default of a claim in habeas petition where appellant never raised the claim on direct appeal to the Ohio Court of Appeals and the Ohio Supreme Court); *Rust*, 17 F.3d at 160-61 (finding adequate and independent state procedural rule where new claims raised in his second motion for leave to file a delayed direct appeal were barred by the Ohio Court of Appeals as *res judicata* because the petitioner had opportunity to raise constitutional claims during delayed direct appeal but failed to do so); *Leroy,* 151 F.2d at 99-100 (holding as adequate and independent state grounds the procedural default of claims raised for the first time in a petition for writ of habeas corpus on the basis of *res judicata* where petitioner failed to raise those claims in his direct appeal to the Ohio Court of Appeals and to the Ohio Supreme Court).

Therefore, because Petitioner failed to provide the state's highest court with an opportunity to correct the alleged violations of his constitutional rights, he procedurally defaulted and has waived the ground for relief absent a showing of cause and prejudice for the default in the state courts, or that a fundamental miscarriage of justice will occur if the claim is not considered herein. *See, e.g., Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] . . . some objective factor external to the defense [that]

impeded . . . efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (quoting *Murray,* 477 U.S. at 488). "Such factors may include interference by officials, an attorney error rising to the level of ineffective assistance of counsel, or a showing that a factual or legal basis for a claim was not previously available." *Wilson v. Hurley*, 382 F. App'x 471, 478 (6th Cir. 2010) (citing *McClesky v. Zant*, 499 U.S. 467, 493-94 (1991)).

As cause for his procedural default, Petitioner argues that appellate counsel was ineffective for failing to raise his claims on direct appeal. (*See* Doc. 1 at PageID 5, 6, 7, 9, 10, 11, 13). Ineffective assistance of appellate counsel can provide cause for a procedural default unless the ineffective assistance of appellate counsel claim is itself procedurally defaulted. *See Murray v. Carrier,* 477 U.S. 478, 488-89 (1986)*. See also Edwards v. Carpenter*, 529 U.S. 446, 452 (2000); *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). "Under Ohio law, a criminal defendant must raise his ineffective assistance of appellate counsel claim in an application for reopening (i.e., a motion for delayed reconsideration) filed 'in the court of appeals where the alleged error took place.'" *Fautenberry v. Mitchell*, 515 F.3d 614, 639 (6th Cir. 2008) (quoting *State v. Murnahan*, 584 N.E.2d 1204, 1209 (1992)); *see also Williams v. Lazaroff*, 648 F. App'x 548, 553 (6th Cir. 2016). Ohio Rule of Appellate Procedure 26(B) permits a criminal defendant to file an application for reopening an appeal within ninety days of the appellate judgment "unless the applicant shows good cause for filing at a later time." Ohio R. App. P. 26(B)(1). In this case, Petitioner has never presented his ineffective assistance of counsel claims to the Ohio courts and has not offered any cause for his failure to do so in the years following his direct appeal. Unexhausted ineffective-assistance-of-appellate-counsel claims may be deemed procedurally defaulted when, as here, a criminal defendant fails to

11

provide cause for failing to file a Rule 26(B) motion for reopening within the prescribed ninety-day period. *See Goldberg v. Maloney*, 692 F.3d 534, 538 n.3 (6th Cir. 2012). *See also Ramirez v. Richard*, No. 16-3106, 2016 WL 11848848, at *4 (6th Cir. Nov. 22, 2016). Because Petitioner's ineffective assistance of appellate counsel claims are themselves procedurally defaulted, they cannot serve as cause to excuse the procedural default of Petitioner's grounds for relief.[4]

Nor has petitioner demonstrated that failure to consider the defaulted claims will result in a "fundamental miscarriage of justice," or in other words, that the alleged error "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995). Actual innocence in this context requires a showing of factual innocence, not mere legal insufficiency. *See House v. Bell,* 547 U.S. 518, 538 (2006); *Carter v. Mitchell,* 443 F.3d 517, 538 (6th Cir. 2006) (citing *Bousley v. United States,* 523 U.S. 614, 623 (1998)); *see also Vanwinkle v. United States,* 645 F.3d 365, 369 (6th Cir. 2011). Furthermore, the Supreme Court has stated that "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of . . . new evidence, no juror, acting reasonably, would have voted to find him

---

[4] The parties do not dispute that Petitioner's grounds for relief are based on the state-court trial record and could have been raised on direct appeal. As noted above, Petitioner contends that appellate counsel was ineffective for failing to raise the claims on direct appeal (Doc. 1 at PageID 5), and Respondent argues that none of his claims relied on evidence outside the record (Doc. 6 at PageID 1380, n.5). In any event, even if any of Petitioner's claims rely upon off-the-record evidence and should have been raised in a post-conviction motion, his claims remain procedurally defaulted. The time period for filing a post-conviction petition has long since expired, and the record does not reflect that Petitioner could meet the stringent requirements for consideration of his claim in an untimely post-conviction action. *See* Ohio Rev. Code § 2953.23; *see also Johnson v. Turner*, No. 2:14-cv-1908, 2017 WL 2633188, at *3 (S.D. Ohio June 19, 2017) (enforcing procedural default under similar circumstances) (citing *Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013)). *See also Hunt v. Gray*, No. 2:19-cv-4465, 2019 WL 5310230, at *5 (S.D. Ohio Oct. 21, 2019) (same); *Cremeans v. Warden*, No. 2:18-cv-633, 2018 WL 6831453, at *13 (S.D. Ohio Dec. 27, 2013) (same).

guilty beyond a reasonable doubt.'"  *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup,* 513 U.S. 298, 329 (1995)); *see also House*, 547 U.S. at 538 (pointing out that the *Schlup* actual-innocence standard is "demanding and permits review only in the extraordinary case") (internal citation and quotation marks omitted).  To establish a credible gateway claim of actual innocence, a petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."  *Schlup*, 513 U.S. at 324; *see also Connolly v. Howes*, 304 F. App'x 412, 417 (6th Cir. 2008).  No such showing has been made in this case.

For the foregoing reasons, Petitioner has procedurally defaulted and waived his grounds for relief.  Because Petitioner has neither demonstrated cause for the default of his claims or that failure to consider the defaulted claims will result in a fundamental miscarriage of justice, it is recommended that the petition be denied.

## IT IS THEREFORE RECOMMENDED THAT:

1.  The petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2.  A certificate of appealability should not issue with respect to the claims alleged in the petition, which this Court has concluded are waived and thus procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484–85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[5]

---

[5] Because this Court finds that the first prong of the *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in any of his grounds for relief.  *See Slack*, 529 U.S. at 484.

3.  With respect to any application by Petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** Petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).


 /s/ *Chelsey M. Vascura* _____
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE